Salvatore Vitiello v. Commissioner.
Vitiello v. Commissioner
Docket No. 53586.
United States Tax Court
T.C. Memo 1957-214; 1957 Tax Ct. Memo LEXIS 37; 16 T.C.M. (CCH) 980; T.C.M. (RIA) 57214; November 15, 1957
*37 Murray S. Levine, Esq., 39 Broadway, New York, N. Y., for the petitioner. Theodore E. Davis, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: This proceeding involves deficiencies in income tax and additions to tax for the taxable years 1945, 1946 and 1947, as follows: Additions to Tax
Income
Sec.
Sec.
Sec.
Sec.
Year
Tax
293(a)
293(b)
294(d)(1)(A)
294(d)(2)
1945
$10,530.17
None
$5,265.09
None
$616.30
1946
2,863.90
$143.20
None
None
None
1947
681.93
34.10
None
$61.27
40.86
The issues presented for our consideration are (a) cost of improvements on property at 2063 E. 34th St., Brooklyn; (b) whether petitioner, as of January 1, 1945, has met the burden of proving that he was the owner of properties at 2017-76th St., Brooklyn, and 1577-57th St., Brooklyn, both of which were then titled in the name of others; (c) the amount to be included in petitioner's net worth as of December 31, 1945, in relation to a savings account in the name of petitioner's wife; (d) basis for purposes of closing net worth of mortgage on 1753-79th St., Brooklyn; (e) basis for like purposes *38 of an automobile; (f) whether or not a deduction in determining closing net worth is allowable in relation to a debt of petitioner paid during the year by his brother; (g) whether or not the investigating agent improperly failed to follow leads; (h) whether respondent established for 1945 that part of the deficiency was due to fraud with intent to evade taxes; (i) whether additions to tax under section 294(d)(2) are to be applied for 1945; and (j) whether petitioner has met the burden of proving error in respondent's determinations of income taxes for 1946 and 1947, additions to tax under section 293(a) for 1946 and 1947, and additions to tax under sections 294(d)(1)(A) and 294(d)(2) for 1947. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioner, Salvatore Vitiello, filed Federal income tax returns for the taxable years 1945 to 1947, inclusive, with the then collector of internal revenue for the first district of New York. In the year 1920, petitioner emigrated from Italy (where he was born and had received his high school education) to the United States. He became a self-employed building contractor in approximately the *39 year 1930. In September 1944, petitioner and another person formed a partnership known as "Puritan Luggage Company." In January 1945, petitioner purchased his partner's interest. The Commissioner of Internal Revenue determined the deficiency in income tax due from petitioner for the taxable year 1945 by employment of the net worth and nondeductible expenditures method. Some of the entries on petitioner's books for alleged cash purchases were not supported by invoices or receipts. Many cancelled checks made payable to cash, purported to have been issued in payment for such purchases, were missing. For the year 1945, no records were maintained by petitioner showing his purchases, sales, and ownership of mortgages upon real estate. Petitioner sold some mortgages in 1945, but did not report the transactions on his income tax returns for that year. He also received interest payments in 1945 on mortgages receivable which he did not account for in his income tax return. On April 10, 1945, a savings account (#24554) in the Bensonhurst National Bank, New York, N. Y., was opened in the name of Elsie Vitiello (wife of petitioner) with an opening deposit of $1,617. As of December 31, 1945, the *40 balance to the credit of the said account was in the amount of $3,201.07. $233 of said balance belonged to Elsie Vitiello, being given to her by her children. She also saved approximately $767 from table money received from petitioner. All of the money in the account in excess of $1,000 belonged to petitioner. On November 13, 1945, petitioner opened a savings account (#25596) in the Bensonhurst National Bank, New York, N. Y., with an opening deposit of $2,350.18. As of December 31, 1945, the balance to the credit of the said account was in the amount of $5,082.06. On January 1, 1945, petitioner owned U.S. Government bonds which cost him $250 and on December 31, 1945, his total holdings of such bonds, at cost basis, was in the amount of $625. Petitioner owned real estate as of January 1, 1945, and December 31, 1945, located at 1535 - 80th St., Brooklyn, N. Y., having a cost basis to him of $5,750. Approximately in the middle of the year 1944, petitioner purchased improved property located at 2063 East 34th St., Brooklyn, N. Y., for $500 in cash and subject to an existing mortgage in the amount of $4,800. Petitioner, shortly after the purchase of this property, replaced the *41 roof and installed a new hot water tank, new doors in the rear of the building and new faucets in the kitchen at a cost of $675. The said property was sold by petitioner for $6,300, of which $1,786.67 was received in cash, the difference of $4,513.33 being represented by the balance of the existing mortgage, subject to which the property was sold. The gain realized was not reported and the transaction was not referred to in petitioner's income tax return for 1945. All property in the name of petitioner's wife, Elsie Vitiello, was in fact the property of petitioner, except to the extent referred to above in connection with savings account #24554 in the Bensonhurst National Bank. The adjusted cost basis of the mortgage receivable owned by petitioner on January 1, 1945, and the adjusted cost basis of the respective mortgages receivable owned by petitioner on December 31, 1945, were in the amounts shown in our exhibit A, set forth infra in our Opinion except the mortgage receivable on the property 1753-79th St., Brooklyn, the adjusted cost basis of which was $1,923.62 as of December 31, 1945, instead of $2,959.42, the amount set forth in relation thereto in said Schedule A. Petitioner's *42 capital account in the Puritan Luggage Company as of January 1 and December 31, 1945, reflected a balance in the respective amounts of $4,000 and $5,414.17. Petitioner's adjusted cost basis of an automobile owned by him as of January 1 and December 31, 1945, was $2,000. Depreciation on this automobile in the amount of $220 was deducted by petitioner in his income tax return filed for the year 1945. As of January 1, 1945, petitioner was indebted to the Colonial Trust Company, New York, N. Y., in the amount of $1,909.49. This debt was paid prior to December 31, 1945, by petitioner's brother, Ciro Vitiello. The payment constituted a loan or gift from Ciro to petitioner. Petitioner's indebtedness on the mortgage against his residence, 1535 - 80th St., Brooklyn, N. Y., as of January 1 and December 31, 1945, was in the respective amounts of $3,747.50 and $3,388.21. As of January 1, 1945, petitioner's mortgage indebtedness on real property located at 2063 East 34th St., Brooklyn, N. Y., was in the amount of $4,800. By payments submitted with declarations of estimated tax for the year 1945, petitioner paid a Federal income tax for the taxable year 1945 in the amount of $1,125. *43 Petitioner incurred living expenses for the taxable year 1945 in the amount of $4,600. On June 29, 1940, petitioner purchased improved property located at 2017 - 76th St., Brooklyn, N. Y., from Minnie Resnick. Petitioner paid $2,000 in cash. The property, at the time of purchase, was subject to a mortgage of $6,700 which was reduced to $5,300 by January 1, 1945. $1,200 to $1,500 was spent on improvements. Title to this property was transferred by petitioner to his brother, Ciro Vitiello, on January 15, 1942. Ciro was a citizen while petitioner was an alien. On March 17, 1945, the property was sold to Mamie Ansaldi for $5,500 subject to the existing mortgage, the then balance of which was $5,275. Of the $5,500, $2,000 was a purchase money mortgage payable to Ciro. Petitioner made no reference to the transaction, and reported no gain from the sale of the property in 1945. On November 4, 1944, title to property at 1577 - 57th St., Brooklyn, was taken in the name of Carmelo Lantieri, who was a citizen. The cost of the property is claimed to have been $6,250, based upon payment of $1,000 in cash, an existing mortgage of $3,750 (of which Flatbush Savings and Loan Association was mortgagee) *44 and the expenditure of about $1,500 for improvements. The property was sold to Antonio Desgro and wife on January 15, 1945, subject to the building association mortgage of $3,750, for $1,500 in cash in addition to which second mortgage was executed payable to petitioner in the amount of $1,421.52, the second mortgage stating on its face that it was a purchase money mortgage. The consideration for the second mortgage was alteration work done by petitioner. The title to the property was not at any time in the name of petitioner. Assuming the cost and selling price to be as claimed by petitioner, the sale in 1945 resulted in a gain. Petitioner failed to report any such gain, and made no reference to the transaction, in his income tax return for 1945. A part of the deficiency for the year 1945 was due to fraud with intent to evade income taxes. Opinion I - Years 1946 and 1947 Respondent determined deficiencies in income taxes for 1946 and 1947; additions to tax under section 293(a) for 1946 and 1947; and additions to tax under sections 294(d)(1)(A) and 294(d)(2) for 1947. The burden of proof of error as to the foregoing was on petitioner. No evidence was presented showing error *45 in relation thereto, and no argument with respect thereto was presented in petitioner's briefs. Accordingly, respondent's determinations of deficiencies and additions to tax for the years 1946 and 1947 are sustained. II - Year 1945 A. Understatements Respondent determined a deficiency in income taxes for the year 1945 in the amount of $10,530.17. The burden of proof is upon petitioner, whose efforts to establish error are addressed to an attack upon a number of items in the net worth and expenditures statement prepared by the special agent who testified that the said statement was the basis for respondent's determination. Petitioner likewise urges error in relation to omissions from said statement. As a convenient focus for our discussion, we set forth said statement at this point as Exhibit A. The letter "S" has been added by us before each item with respect to which the parties have stipulated that there is no controversy. There are also some items on the statement which have not been stipulated, but with respect to which no issue is raised on brief. Our Findings of Fact dispose of such items. Our discussion will be limited to those items in connection with which inclusion in *46 or exclusion from the net worth statement, in whole or in part, has given rise to issues discussed on brief. EXHIBIT A.
SALVATORE VITIELLO
NET WORTH
Assets
1/ 1/45
12/31/45
Cash in Banks
Bensonhurst Natl. Bank #24554
$ .00
$ 3,201.07
Bensonhurst Natl. Bank #25596
(S) .00
(S) 5,082.06
U.S. Government Bonds
(S) 250.00
(S) 625.00
Real Estate
1535 80th St., Bklyn, N. Y.
(S) 5,750.00
(S) 5,750.00
2063 E. 34th St., Bklyn, N. Y.
5,200.00
0
Mortgages Receivable
101 Chauncey St., Bklyn, N. Y.
560.00
143 Bay 8th St., Bklyn, N. Y.
750.00
354A Quincy St., Bklyn, N. Y.
875.00
538 E. 85th St., Bklyn, N. Y.
1,505.00
714 Herkimer St., Bklyn, N. Y.
1,740.00
611 Madison St., Bklyn, N. Y.
1,089.00
1753 79th St., Bklyn, N. Y.
2,959.42
881A Greene St. Bklyn, N. Y.
300.00
200.00
Capital Account - Puritan Luggage Co.
(S) 4,000.00
(S) 5,414.17
Automobile
(S) 2,000.00
(S) 2,000.00
Total Assets
$ 17,500.00
$ 31,750.72
Liabilities
Due Colonial Trust Co.
$ 1,909.49
$ 0
Mortgages
HOLC - 1535 80th St., Bklyn, N. Y.
(S) 3,747.50
(S) 3,388.21
2063 E. 34th St., Bklyn, N. Y.
4,800.00
0
Total Liabilities
$ 10,456.99
$ 3,388.21
Net Worth
$ 7,043.01
$ 28,362.51
Increase in Net Worth
$ 21,319.50
Federal Taxes Paid
1,125.00
Living Expenses, including Insurance (Estimated)
(S) 4,600.00
Net Income per Net Worth Method
$ 27,044.50
Less: Net Income Per Return
5,973.83
Unaccounted for increase in Net Income per Net Worth
Method
$ 21,070.67
*47 We first consider disputed items in opening net worth. With respect to 2063 E. 34th St., Brooklyn, N. Y., both parties agree that the amount of $5,200 included in opening net worth representing the then adjusted basis of the property attributable to original cost is correct as far as it goes. Petitioner maintains that $750 should be added, representing cost of improvements made by him shortly after the property was purchased. Respondent does not appear to question the fact that some improvements were made, or that some amount should be added to cost in relation thereto. The item of $750 is an estimate, and no supporting records were offered. We hold that $675 is to be added to opening net worth representing the cost of the improvements in question. (C.A. 2, 1930). Petitioner urges that respondent erred in failing to include 2017 76th St., Brooklyn, in opening net worth. It is petitioner's view that the asset should be included at a figure of $9,160 with an offsetting liability on a mortgage in the amount of $5,300. The property was purchased by petitioner on June 29, 1940. He paid cash in the amount of $2,000, and the property *48 was subject to a mortgage of $6,700 which had been reduced to $5,300 by January 1, 1945. $1,000 to $1,200 was spent on improvements. The figure of $9,160 is calculated after allowance of depreciation at 2 per cent per annum on an allocation of $6,000 as the cost to be attributed to the building. The property was conveyed by petitioner to his brother Ciro on January 15, 1942. It was sold on March 17, 1945, to Mamie Ansaldi for $5,500, subject to the existing mortgage, the then balance of which was $5,275. $2,000 of the $5,500 was represented by a purchase money mortgage, payable to Ciro. Petitioner's position is that the property 2017 - 76th St. was his own from the time he purchased it in 1940 until it was sold to Mamie Ansaldi in 1945; that it was put in his brother's name in 1942 with the understanding that his brother, who was a citizen, was only a nominee, the reason for the transfer, according to petitioner, being that he (petitioner) was an alien enemy, and, on information, feared that his property would be confiscated. Petitioner also claims that when the property was sold to Ansaldi, the cash part of the purchase price was received by him, and that his brother Ciro received *49 none of it. Ciro's testimony at the trial of the instant case corroborates the foregoing. If this were all, we might have been favorably impressed by the testimony despite the self-interest of the petitioner and the probable bias of his brother. The record discloses, however, that on April 17, 1950, Ciro gave sworn evidence before the special agent which was reported, and the transcript signed and sworn to by Ciro in which the latter stated that the 2017 - 76th St. property was his; that he bought it, although he didn't know from whom; that as far as he knew the property was always his; that if his brother (petitioner) had it previously, his brother didn't tell him; that maybe his brother "finagled" to make a couple hundred dollars commission. In addition to the foregoing, it is clear that the selling price to Mamie Ansaldi was in excess of the basis claimed by petitioner, but the latter, although claiming the property was his, and that he received the proceeds of the sale, failed to report any such sale, or gain therefrom in his income tax return for 1945, which was the year of sale. His only explanation for failure to do so was that he was confused about the ownership of the *50 property. In view of the foregoing, we cannot accept the testimony of either petitioner or his brother with respect to the 2017 - 76th St. property, and hold that petitioner has failed to establish error in respondent's refusal to regard the property as an asset in determining the deficiency. A somewhat similar issue arises with respect to 1577 - 57th St., Brooklyn, which petitioner claims should be included in opening net worth at a figure of $6,250, with an offsetting liability on mortgage to Flatbush Savings and Loan Association in the amount of $3,750. The title to the property was in the name of Carmelo Lantieri. Respondent did not include either the asset or liability. Petitioner claims that he bought the property on November 4, 1944, but had it put in the name of Carmelo Lantieri (who was a citizen) as his nominee because of the fears already discussed in relation to the 2017 - 76th St. property. The cost figure of $6,250 is claimed to be based upon payment of $1,000 in cash, the mortgage of $3,750, and the expenditure of about $1,500 for improvements. The property was sold to Antonio Desgro and wife on January 15, 1945, for $1,500 in cash, subject to the building association *51 mortgage of $3,750 and a second mortgage was executed to petitioner in the amount of $1,421.52. Petitioner claims to have received the proceeds as the true owner. He points to the fact that the $1,421.52 second mortgage was payable to him, and purported to be a purchase money mortgage. Again, the problem is one of credibility. We do not have the benefit of Lantieri's testimony and, at best, have no basis for assuming that it would have corroborated that of petitioner on whom the burden of proof rests. The fact that the second mortgage in the amount of $1,421.52 purported to be a purchase money mortgage is not determinative of ownership since a mortgage executed by the purchaser contemporaneous with the purchase to secure the payment of the balance of the purchase price may be a purchase money mortgage whether executed to the vendor or to a third person. ; ; ; . That the second mortgage was payable to petitioner is a fact to be taken into consideration, but it is not of itself sufficient to establish ownership of the property. *52 In this connection, we may add that the letter of April 12, 1950, written by Robins, the real estate broker, to the special agent in charge (received in evidence with the consent of petitioner's counsel, but subject to the reservation to each counsel of the right to go into the question of ownership further upon the expected taking of Robins' testimony) states that petitioner took the second mortgage in the amount of $1,421.52 for alteration work done by petitioner. No change or qualification of this view was elicited from Robins when his deposition was taken later. It is clear that if petitioner (as he claims) did buy, own and sell the property at the amounts suggested in the testimony, the result would have been a taxable gain to petitioner of a few hundred dollars. In one part of his testimony, petitioner admits this. He also admits that he failed to report any gain, or make any reference to the transaction, in his income tax return for 1945. He attempted to explain this by testifying at one point that he did not report the gain because the property was not in his name, and at another point that he didn't think he had realized a gain. On the whole, the testimony is no more convincing *53 than that relating to the 2017 - 76th St. property. We hold, therefore, that petitioner has not succeeded in showing error on the part of respondent in refusing to take into account the 1577 - 57th St. property in determining the deficiency. No further items of opening net worth are disputed in petitioner's brief. We turn, therefore, to the items in closing net worth as of December 31, 1945. The parties agree that the balance in Bensonhurst National Bank account #24554 (opened April 10, 1945, in the name of Elsie Vitiello) was $3,201.07. Petitioner admits that most of the money in this account belonged to him, but claims that about $1,000 belonged to his wife, Elsie. Her testimony is to the effect that she received $4 or $5 each week from her children, which she put in this account, and that the balance of the $1,000 which she claimed belonged to her was saved out of weekly table money given to her by her husband. It is obvious that the amounts deriving from her husband were personal, and no adjustment with respect thereto may be allowed in determining his closing net worth. Other than this, respondent does not appear to question seriously that some adjustment is to be made. We *54 hold that the item of $3,201.75 included in closing net worth covering Bensonhurst National Bank account #24554 is to be reduced by $233. Included in assets as of December 31, 1945, were eight mortgages receivable. While considerable evidence was directed to these items, petitioner, on brief, takes issue only with respect to the amount of $2,959.42 included in relation to the mortgage on 1753 - 79th St., Brooklyn. The mortgagor was John Palumba, and the consideration for its issuance to petitioner was for work done and labor and materials furnished in connection with improvements on the premises. No cash passed. The amount included by respondent in closing net worth was the actual balance of the face of the mortgage. It was not a first mortgage, however, and the arrangement for payments, as extended, was $50 per month, including interest, as a result of which the mortgage would have about a seven-year maturity. Robins, the real estate broker, testified that the mortgage was worth 65 per cent of face value, and could not be sold for more than that amount. We think Robins was in a much better position to value the mortgage than the agent. Moreover, there is no attack on Robins' credibility, *55 and the agent relied upon him for much of the information on which the agent's calculations were based. We have no reason to doubt or discount Robins' testimony. Accordingly, we hold that the adjusted cost basis on which the mortgage in question is to be included in closing net worth is $1,923.62 (being 65 per cent of $2,959.42) and closing net worth is to be decreased accordingly. Petitioner argues for a lower valuation than $2,000 for the automobile included in closing net worth at that amount. Since the amount of $2,000 is stipulated, we see no need for further discussion in sustaining respondent except to add, for completeness, that petitioner took a depreciation deduction on the automobile on his income tax return, and no issue with respect to such depreciation is raised on brief by either party. The only remaining issue raised by petitioner with respect to closing net worth relates to respondent's failure to include the sum of $1,909.49 as a liability, thereby, in effect, increasing closing net worth. A liability in the same amount, due Colonial Trust Co., is included in opening net worth (and is not disputed there). During 1945, the trust company sued petitioner for the *56 amount due. Petitioner's brother Ciro turned over to petitioner the amount due, which petitioner paid to the bank. The evidence is not too clear as to whether the money was loaned or donated by Ciro. The latter testified that he regarded it as a loan, but he never tried to get any of it back, because he had lived with petitioner for six or seven years without paying anything for his lodging. In any event, we are satisfied from the evidence that the amount was paid by Ciro, and that it did not constitute income to petitioner. In order to prevent distortion of petitioner's income as calculated under the net worth method, it is necessary that the amount of $1,909.49 be reflected as a reduction in closing net worth. It is immaterial for present purposes whether it be classified as a liability, a gift, or in a miscellaneous category. We thus sustain petitioner on this issue. Petitioner urges, in generalities, that he could not have had net income of $27,044.50 in 1945. As a result of the conclusions which we have announced, supra, the amount of the understatement will be reduced somewhat. There still remains a substantial understatement, however, and we may add that it would be substantial *57 even if we had sustained petitioner in full on all of the specific items with respect to which he raised an issue on brief. We need merely add that petitioner, although taking the stand in his own behalf, has suggested no source of increased net worth, such as gift or inheritance, which would indicate that the increase was attributable to anything other than income from his business, rent, interest, or gains from the disposition of assets. The burden in this respect rests, of course, with petitioner. Petitioner also argues that the agent failed to follow leads concerning ownership of the 1577 - 57th St. and 2017 - 76th St. properties, and cites , in support of the view that we may consider the leads to be true. Our careful review of the record convinces us that the agent made an adequate investigation and was in no way remiss in failing to follow leads. It is not suggested in , that respondent must track to its conclusion every conceivable line of inquiry. We may add that petitioner, in presenting his case, was not placed in the dilemma referred to in , as one of the reasons for *58 the court's expression of views on following up leads. There is no indication that the individuals referred to in the evidence as possibly possessing material information were not as available to, and as readily subject to, subpoena by petitioner as by respondent. Finally, it is clear that petitioner (the first witness in the trial) took the stand voluntarily and testified with respect to many issues in the case in addition to the two in connection with which the failure to follow leads is argued. B. Fraud Respondent determined that a part of the deficiency for 1945 was due to fraud with intent to evade taxes. The burden here is upon respondent to establish his position by clear and convincing evidence. . Since a part of the understatement of income which we have found for 1945 was based upon petitioner's failure to meet his burden of proving error, the respondent, now having the burden, may not rely upon our holding with respect thereto as a basis for establishing fraud. (C.A. 6, 1956). As we said in discussing the understatement, however, even if we had sustained in full *59 all of petitioner's specific arguments on all items questioned by petitioner on brief, there would nevertheless have remained a substantial understatement. While a substantial understatement is not of itself sufficient to establish fraud, it is a factor to be given consideration with all other relevant facts. Moreover, in sustaining his burden of proof of fraud, respondent need not prove the precise amount of the deficiency attributable to fraud, but only that a part of the deficiency is attributable thereto. (C.A. 7, 1948), certiorari denied . We add, preliminarily, that the special agent testified that cash purchases appeared on petitioner's business books for which there was no substantiation or supporting documents; that many checks purporting to have been paid for cash purchases were missing; and that petitioner had no records of mortgages bought and sold by him in the year 1945. The testimony was uncontradicted, and no adequate explanation was offered in behalf of petitioner. We next consider items of income unreported in petitioner's income tax return. Petitioner purchased 2063 E. 34th St. *60 , Brooklyn, in 1944. The total purchase price was $5,300, consisting of $500 paid in cash and a mortgage of $4,800. Petitioner claims that $750 was spent for improvements. In considering understatements, where the burden was on petitioner, we allowed $675. Since the burden on the fraud issue rests with respondent, we here allow the full $750 as part of cost, making the total cost $6,050. Neither party makes a point of depreciation, and we omit this factor (which would reduce basis) in favor of petitioner. The property was sold by petitioner on November 24, 1945, for $6,300, of which $1,786.67 was paid in cash, and the difference of $4,513.33 was represented by the balance of the existing mortgage, subject to which the property was sold. It is thus apparent that upon calculations most favorable to petitioner, a gain of $250 was realized. (Petitioner's recollection was that the cash payment on resale was $2,200 and the balance due on the mortgage was around $4,500.) The gain was not reported and the transaction was not referred to in petitioner's income tax return for 1945. It is clear from petitioner's own testimony that he was fully aware of the transaction. No explanation was offered *61 of the failure to report it except that petitioner claims he did not look at his return. We may add that if we had accepted petitioner's claim of ownership of the properties 2017 - 76th St. and 1577 - 57th St. (both Brooklyn), the result would be two more instances of failure to report gains from the sale of property in 1945. In Exhibit LL, confirmed by testimony taken by deposition, Robins, the real estate broker, stated that during 1945 he received for and remitted to petitioner several payments on account on the sale of mortgages and also payments on account of accrued interest on mortgages held by petitioner or his family. No sales of mortgages or receipts of interest income from mortgages were reported by petitioner on his 1945 return. The amounts of any gains from the sale of mortgages are not specified in the record, but there is no suggestion that any losses were suffered on such sales. Exhibits GG to KK, inclusive, do, however, specify amounts of interest on mortgages received in 1945. There is no denial of the receipt of such income by petitioner, and no explanation of failure to include such income in his return. In view of petitioner's investment during the year in *62 a number of mortgages, and his testimony concerning several of them, there can be no doubt of his awareness of the fact that he received income therefrom. In summary, when we consider that, assuming that all specific issues raised by petitioner on brief are resolved in his favor, it is nevertheless apparent that his income was substantially understated for 1945; that petitioner failed to keep proper supporting data for alleged cash purchases, and failed to keep records of mortgages bought and sold in that year; that petitioner failed to report the sale of 2063 E. 34th St., Brooklyn, or the gain therefrom; that he failed to report any sale of mortgages in 1945, although he does not question Robins' statement that some sales were made; and finally that he failed to report interest received from mortgages, or in any way explain such failure (although not denying that he received such interest), we reach the necessary conclusion that the record establishes, by clear and convincing evidence, that some part of the deficiency for 1945 was due to fraud with intent to evade taxes. As a consequence, additions to tax under section 293(b) are to be applied in an amount to be determined under *63 Rule 50. C. Additions to tax - section 294(d)(2) Respondent determined additions to tax for 1945 under section 294(d)(2). Here, the burden of proof is on petitioner, who has clearly failed to sustain it. Such additions to tax as may be determined under Rule 50 will, therefore, be added. Decision will be entered under Rule 50.